Whitney *v.* Townsend.

---

DANIEL W. WHITNEY and JERUSHA WHITNEY, his wife, Appellants, *v.* RANDOLPH W. TOWNSEND, Respondent.

(GENERAL TERM, FIRST DISTRICT, APRIL, 1869.)

W. owned and mortgaged certain premises to T, by several mortgages, then conveyed by deed, intended as a mortgage, to C., and then in consideration of all the debts so charged upon the premises (that upon the conditional deed being paid by T.), conveyed the same to T., and at the same time obtained a conveyance thereof to him from C., whereupon T. gave C., for the benefit of W., an offer in writing to resell before a specified time, at a sum equal to the consideration of the conveyances to T., and mutual releases under seal were exchanged between T. and W. In an action by W. to redeem from T. after the expiration of the time named in the offer, it appearing that the conveyances to T. were intended to satisfy and extinguish the mortgage debts to him of W.—*Held*, that such conveyances were not merely mortgages, but absolute deeds.

THIS was an appeal taken from a judgment upon the decision of Mr. Justice CLERKE on a case and exceptions.

The plaintiffs brought their suit to obtain the reconveyance of certain lots in New York city, claiming the right to redeem

the same from the defendant. The defendant denied the plaintiffs' right to redeem, and set up various releases and other matters in defence. The court rendered a decision in favor of the defendant, basing the same upon distinct findings of fact, forty-seven in number, from which the following facts, material to the decision on appeal, substantially appeared.

Some time in the spring or summer of 1856, D. W. Whitney, the plaintiff, contracted to purchase from one Kilpatrick certain lots on Park avenue, in New York city, for $10,000, and to erect buildings thereon. Kilpatrick agreed to advance to him for that purpose the sum of $7,000 as the work progressed, but failed to do so to the extent promised, having in August, 1856, advanced but $1,600. Whitney then entered into an agreement with Townsend, the defendant, by which the latter undertook to loan the plaintiff money, upon the security of an assignment, which was made, of Whitney's contract with Kilpatrick. Kilpatrick held the property under a contract with one Kinsley, who was the legal owner of the fee, and on the 1st January, 1857, Kinsley executed five mortgages to the loan commissioners, upon different lots, in the aggregate for $14,442, and after delivery of the mortgages, on the same day, by the defendant's procurement, conveyed the premises, to one Lovett, who paid no consideration, but took the conveyance, as representing the defendant. On the 16th January Lovett conveyed, at the request of the defendant and with assent of Whitney, to one McWilliams, who on the same day, by like request and with assent of Whitney, mortgaged to one Norton for $8,781.98, the sum then due for advances from Whitney to the defendant, and Norton in August, 1858, assigned the mortgage to the defendant. McWilliams, after mortgaging to Norton, and on the same day, at Whitney's request, conveyed the premises to Whitney's wife, the plaintiff Jerusha, by deed, reciting the mortgage to Norton as part of the consideration, and after this conveyance Whitney and his wife executed and delivered various other mortgages to different persons, but

Whitney v. Townsend.

for the defendant's benefit, and for money advanced by him, and to whom they were subsequently assigned. The plaintiffs also executed a conveyance, subsequently to the mortgage before mentioned, to one Coddington, in consideration of a loan of $1,500, which was absolute in terms, but in fact intended as security for the sum loaned. After many negotiations and transactions between the parties, an arrangement, being a modification of one proposed theretofore by the counsel acting at that time for the plaintiffs, was carried out between the parties, on the 8th October, 1861, the defendant acting through Mr. A. R. Dyett as his counsel, substantially as follows, viz. :

Coddington conveyed the premises to the defendant, who gave to Coddington his check for $1,500 in payment, to that extent of the amounts due him by the plaintiffs; the plaintiffs also conveyed the premises to the defendant, and full general releases were executed under seal, acknowledged and interchangeably delivered between the plaintiffs and the defendant, and certain suits which had arisen on both sides out of the transactions before recited, were substantially abandoned, and a letter signed by the defendant was delivered to Coddington at the same time, but by agreement between the plaintiffs and defendant, was dated on the day following, as follows, viz. :

" *Dear Sir*—I will sell to you the three houses and lots on Park avenue, Nos. 19, 21 and 23, lately purchased by me of Mrs. Jerusha Whitney at any time before the 1st day of February, 1863, in such condition as they may then be, for the following prices :

" The house and lot on the corner of Park avenue and Thirty-fifth street for $12,166.

" The house and lot next to the corner for $10,666.

" The house and lot next but one to the corner for $10,666.

" To these prices, however, is to be added interest on the purchase money from this date, and all taxes and assessments hereafter to accrue, or to be imposed upon the premises up to the time of your purchase, deducting whatever amount I

Whitney *v.* Townsend.

may receive up to that time for rent of the house sold over and above the insurance and repairs, and subject to any then existing leases that may have then been made by me of either of the houses. .

" As you have every opportunity to examine the title, it must be understood, that the deed from me to you will contain no covenants whatever except the usual covenant against my own acts. This offer to remain open for your acceptance until the 31st day of January, 1863, but not a day afterward.

" I acknowledge the receipt of one dollar from you as a consideration for giving you this option to purchase the houses.

" Yours truly,

(Signed)                 . " R. W. TOWNSEND."

The last three lines of this letter were added at the request of the plaintiff, D. W. Whitney, who insisted that the agreement or offer in the letter, on the part of Townsend, had no consideration, and at his (D. W. Whitney's) request, also, at the same time, a guarantee was indorsed on said letter, and signed by said A. R. Dyett, as follows:

" *Dear Sir*—In consideration of one dollar to me paid, I guarantee the performance by Mr. Townsend of the annexed agreement on his part, and I will forfeit $500 if Mr. Townsend shall refuse to perform the same.

" Yours very truly,

(Signed)        .                 " A. R. DYETT.
" Mr. Thomas B. Coddington.

        " New York, *Oct. 8th*, 1861."

The plaintiffs and defendants also gave consent, respectively, that judgments should be entered in Townsend's favor, in certain suits, viz.: One brought by the latter to foreclose two of the mortgages held by him on the premises; and another by the former to obtain judgment, declaring certain of the mortgages executed by them void for usury. The defendant also surrendered a claim against the plaintiffs for

Whitney v. Townsend.

his professional services in their behalf as a lawyer, and gave them a consent to discontinue without costs, a certain other action against them, also arising out of the same transactions.

The thirty-fourth finding of fact is substantially given above; the thirty-fifth to fortieth findings, both inclusive, referred to in the opinion, were as follows, viz.:

"35. The mortgages which defendant at this time owned, and had in his possession, executed by the plaintiffs, and the bonds executed by the plaintiffs, and accompanying said mortgages, as specified in the thirty-third finding herein, were not given up by defendant to plaintiffs, or either of them, on the 8th of October, 1861; nor were these bonds and mortgages, or any of them, canceled, nor did the defendant agree to cancel them, or any of them, nor was anything said by any one on the subject at the interview at defendant's office, specified in the thirty-fourth finding. Defendant retained these bonds and mortgages, and there is no evidence that he has since delivered them up, or any of them, or canceled them, or any of them, or offered to do so; but the release executed and delivered by the defendant to the plaintiffs on said 8th day of October, 1861, released and discharged the plaintiffs from the payment of the said bonds and mortgages.

"36. The law firm of Townsend, Dyett & Raymond (of which defendant was a member), did not, nor did defendant on behalf of that firm, sign or execute any receipt or other paper, discharging the plaintiffs, or either of them, from any alleged indebtedness to said law firm.

"37. At the interview at defendant's office, 8th October, 1861, stated in the thirty-fourth finding, it was probably supposed by defendant, by the plaintiffs, and by Coddington, that the letter to Coddington was ultimately for the benefit of the plaintiffs, or for the benefit of the plaintiff, Jerusha Whitney. The said Coddington, from said 8th day of October, 1861, until after the commencement of this action, held the said letter in his own possession, and refused to deliver the same to plaintiffs, claiming a right to hold the same for his own protection, and as security for the payment of the

balance due him by the plaintiffs for money lent to them, and neither the plaintiffs, nor the said Coddington, either within the time specified in the said letter, or at any time before the commencement of this action, ever accepted the offer contained in the said letter, or notified the defendant of his or their intention to do so; nor did the said Coddington ever assign the said letter, or any offer or agreement therein contained, or any interest therein, to the plaintiffs, or either of them.

"38. At the said interview at defendant's office, 8th October, 1861, defendant did not state to plaintiff, D. W. Whitney, that if the property in question should be sold before his (defendant's) advances were paid, he would pay over to plaintiffs all he (defendant) received over and above his advances; but, on the contrary, both the defendant and his counsel, A. R. Dyett, Esq., refused to make, and did not make, any agreement of any kind with the plaintiffs, or either of them, for or upon the subject of the sale to them, or either of them, of the houses and lots in question, but insisted upon making, and did make, all the agreement that was made on that subject, and which was contained in the letter and offer before mentioned, addressed to Coddington, and dated October 9th, 1861; that the defendant carefully and resolutely declined to give the plaintiffs any right, legal, or equitable, against him requiring that he should reconvey the property to the plaintiffs, or either of them, or that he should be under any legal liability whatever to do so.

"39. At the said interview at defendant's office, 8th October, 1861, neither the defendant, or Mr. Dyett on his behalf, stated to plaintiff, Mr. Whitney, that on the payment of his (defendant's) advances, defendant would return the property to the plaintiff, Jerusha Whitney. But, on the contrary, it was understood by the plaintiffs and their counsel, and Mr. Coddington, as well as by the defendant, that unless the offer contained in the letter of the defendant to Coddington, of October 9th, 1861, before referred to, was accepted, and the purchase money paid on or before the day specified

therein, the said Coddington would not have any right or privilege of purchasing the houses and lots in question after that time; but the title would continue absolute in the defendant, free from any obligation on his part to convey pursuant to said offer. And at the interview before referred to, of the 8th of October, 1861, at defendant's office, Albert Smith, one of the plaintiff's counsel, asked the plaintiff, Daniel W. Whitney, if the time fixed in the offer to make the purchase was long enough, and the said D. W. Whitney answered that the time was sufficient.

"40. At the said interview, on the 8th of October, 1861, specified in the thirty-fourth finding, both the defendant, and Mr. Dyett, on his behalf, stated to the plaintiffs and Mr. Coddington, that the latter would not be entitled to a conveyance of the property, on the payment of the purchase money mentioned in the letter or offer aforesaid, after the day specified therein."

The defendant having sold one of the lots, and the house which had been built thereon by the plaintiffs, for $16,000, the plaintiffs caused a tender of the balance over and above the price received by the defendant upon the sale, of the latter's advances, and demanded a reconveyance to the plaintiff, Jerusha Whitney, of the lots and houses unsold, and upon refusal, brought this suit.

*Henry L. Clinton*, for the appellants.

*Henry A. Cram*, for the respondents.

Present—CLERKE, SUTHERLAND and INGRAHAM, JJ.

By the Court—SUTHERLAND, J. On the 8th of October, 1861, when the transaction specified in the thirty-fourth and seven following findings of fact took place, the defendant owned all the mortgages on the property in question (Nos. 19, 21 and 23 Park avenue), and the bonds accompanying the same, except the two to the loan commissioners.

These mortgages are described in the sixth, eighth, eleventh, thirteenth, fourteenth and fifteenth findings of fact.

It follows from the findings which have been referred to, that at the time of the transaction of the 8th of October, specified in or by the thirty-fourth and following findings of fact, that the defendant was the owner and holder of eight mortgages on the premises and the accompanying bonds, the aggregate amount of the principal of which, without interest, was about $23,500, and which mortgages were all subsequent to the two mortgages to the loan commissioners, amounting together to $3,700 without interest.

By the seventeenth finding of fact, it is found, that the deed to Coddington, though absolute in form, was given and intended as a mortgage to secure the payment of $1,500, advanced by Coddington to the plaintiffs, and was always so regarded by the plaintiffs, the defendant and Coddington.

By the forty-first finding of fact, it is found, that at the time of the delivery of the deed of the plaintiffs to the defendant, on the 8th of October, 1861, specified in the thirty-fourth finding, the title to the property in question, was in the plaintiff, Jerusha Whitney, subject to the mortgages specified in the eighth, eleventh, thirteenth, fourteenth and fifteenth findings and subject to the mortgage to Coddington (in form an absolute deed), specified in the seventeenth finding.

By the thirty-fourth finding, it is found as part of the transaction of the 8th of October, that Coddington delivered to the defendant a deed of the premises, executed by him (Coddington) and his wife, and that the plaintiffs delivered to the defendant a deed of the premises executed by them, and that the defendant gave his check to Coddington for $1,500.

The words of the finding are, that " defendant delivered to Coddington, his (defendant's) check for $1,500 in payment to that extent, of the amount due him by the plaintiffs "; but I think it entirely clear from the evidence, that Coddington at the time of the transaction of the 8th of October, did not claim or pretend to claim, that he held the deed of the premises as security for any amount or sum beyond the $1,500;

and that the whole transaction of the 8th of October, took place, and was carried out, with the understanding and upon the assumption of all the parties to it, that the only claim or lien Coddington had on the premises, was the $1,500. Considered by itself, the absolute conveyance of Coddington and wife to the defendant, was in equity, but the assignment of a mortgage for $1,500; but considered in connection with the absolute conveyance made at the same time by the plaintiffs, the two conveyances in form conveyed to the defendant the legal and equitable title in or to the premises, and the equity of redemption.

The letter of the defendant, addressed and given to Coddington on the 8th of October, specified in the thirty-fourth finding, must be deemed under undisputed circumstances to have been intended for the benefit of the plaintiffs or of Jerusha Whitney, one of the plaintiffs, and whatever right or privilege it gave or was intended to give, I assume that the plaintiffs can avail themselves of.

I have referred sufficiently to the findings of fact to state intelligently what I regard as the question in this case.

It is said that the question is, whether the transaction of the 8th of October, as specified in the thirty-fourth and subsequent findings, was a mortgage or an absolute sale; but I think it better to say that the question is, did the transaction of the 8th of October, as found and specified in the thirty-fourth and subsequent findings, satisfy and extinguish the defendant's mortgage debts.

Were the absolute deeds of the plaintiffs and of Coddington and wife executed for the purpose or with the intention of satisfying and extinguishing these debts, as between the plaintiffs and the defendant, and were these absolute conveyances renewed by the defendant as a satisfaction and extinguishment of these debts?

Unless the defendant's debts survived the transaction of the 8th of October, it is impossible to hold that it was a mortgage or amounted to a mortgage, or that the letter of the

defendant addressed to Coddington was, or was intended to be, or to operate as, a defeasance.

We cannot give the plaintiffs, or either of them, a right to redeem, unless we hold that the defendant's mortgage debts have continued, notwithstanding the transaction of the 8th of October, and that the letter to Coddington was given and received as a defeasance, and not as an independent promise to re-sell or to re-convey.

I infer from the evidence and the findings, though upon this point the case is more obscure than any other, that the aggregate of the prices or sums mentioned in the letter to Coddington as the prices or sums to be paid with interest, etc., for re-conveyance of the several houses and lots, was made up by adding the $1,500 paid to Coddington to the aggregate of the amounts due on all the mortgages on the premises, including not only the eight held and owned by the defendant, but also the two to the loan commissioners. This, however, does not precisely agree with the statement in the deed of the plaintiffs to Coddington, of the amount due on all the mortgages.

But assuming the aggregate of the prices mentioned in the letter to Coddington to be paid with interest, &c., for the re-conveyances to be the precise amount which the plaintiffs ought to pay with interest, &c., to redeem the three houses and lots, if allowed to redeem, yet it does not necessarily follow that the transaction of the 8th of October was or should be regarded as a mortgage, or that the title to Coddington was, or was intended to be, a defeasance.

A mortgagor can sell his equity of redemption to his mortgagee. He can convey it in satisfaction of his mortgage. If he does so, there is no rule of law or equity which prohibits the mortgagee from giving back to the mortgagor an agreement to resell or reconvey within a certain time for, or on payment of the mortgage debt and interest. If he does so, it does not necessarily follow as a conclusion of law, or from any maxim or principle of courts of equity, that the transaction is or amounts to a mortgage, and the agreement

to reconvey a defeasance. The whole question is a question of intention.

A court of equity will scrutinize the transaction, because of the relation between the parties, and it will give the mortgagor the benefit of any reasonable doubt; but if from the circumstances of the transaction, including declarations as well as acts, the inference is clear, that the transaction was intended to be an absolute sale with a right to re-purchase, and not a mortgage, a court of equity will hold the parties to their intention.

A court of equity has no more right than a court of law to make contracts for parties.

If you start in this case with the assumption, that the letter to Coddington was a defeasance, and say, therefore, the transaction of the 8th of October, of which the letter forms a part, was a mortgage, or with the assumption that the transaction was a mortgage, and say, therefore, the latter was a defeasance, of course the right of redemption follows.

There is no such thing as an irredeemable mortgage. No such thing can be created. The principle that a court of equity could and would relieve from a forfeiture by the terms of the mortgage contract, would seem to have been established notwithstanding the opposition of the courts of law at an early day. (See *Langford* v. *Barnard*, Tothill, 134; *Emmanuel College* v. *Evans*, 1 Ch. Rep., 18.)

The recognition of this principle and its application in and to cases, established as a pure equitable right, what is called the "mortgagor's equity of redemption." This right courts of equity will not permit to be waived, defeated, impaired or fettered by any contrivance of the parties, or any agreement, covenant or act even of the mortgagors, at the time the mortgage is created, or forming part of a transaction by which the mortgage or the mortgage debt is recognized and continued as a mortgage debt.

To permit this to be done would be inconsistent with the establishment and application of the right or principle of redemption as a right or principle of pure equity.

Hence, the maxim, " once a mortgage always a mortgage."

Of course, upon the assumption that the transaction of the 8th of October, was a mortgage, or a continuation of the defendant's mortgage debts, and the letter to Coddington a defeasance, all that was said or done at the time of the transaction, tending to show that the parties to it intended that the transaction should and would, as between the plaintiffs and the defendant, satisfy and extingush the defendant's mortgage or mortgage debts, would be utterly immaterial; but it is clear, that for the purpose of determining this preliminary question, whether by the transaction the parties to it intended to extinguish or continue the mortgage debts as between the plaintiffs and the defendant, upon the determination of which depends the determination of the question, whether the transaction was or should be regarded as a mortgage or as a continuation of the mortgage debts and the letter to Coddington a defeasance, all that was done or said at the time by any or either of the parties to the transaction relating to its subject might be material. What was said by any or either of the parties at the time was admissible in evidence, not of course for the purpose of contradicting or varying the letter or the deeds, but for the purpose of showing their intended effect, that is, for the purpose of showing whether the transaction was intended to extinguish or to continue the defendant's mortgage debts.

The circumstances, that there was the relation of mortgagor and mortgagee between the parties, that the defendant is a lawyer, and that one of the plaintiffs and the one most interested in the question of the right of redemption, is a married woman, that the defendant had formerly been the lawyer of the other plaintiff, her husband, the nature of the pending litigations between the plaintiffs and the defendant at the time of the transaction, and other undisputed circumstances, have led me to examine this case, and the question of intention in it with special care, and would have inclined me, and probably have made it my duty to give the plaintiffs the benefit of any reasonable doubt; but I must say, as the

result of such examination, that I cannot avoid the conclusion, that the transaction of the 8th of October was intended not only to settle the pending litigations and all matters in difference between the plaintiffs and the defendant, but was intended also to satisfy and extinguish the defendant's mortgages and mortgage debts, certainly as between the plaintiffs and the defendant.

Mr. Whitney's own evidence will not permit me to doubt, that at the close of the transaction, he, his counsel and Coddington, understood and supposed, that a reconveyance or reconveyances under the letter to Coddington, could not be compelled or rightfully claimed, without complying *with the terms of the letter.*

It may be that it was the defendant's main purpose by the transaction to get rid of the pending litigations and the question of usury; but if so, I cannot doubt that he intended to get rid of them by accepting the absolute conveyances in satisfaction of his mortgages and claims.

Looking only at such of the circumstances of the transaction of the 8th of October, specified in the thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth and fortieth findings, as are unquestioned by an exception, in the light thrown upon them by the relations of the parties, and the circumstances under which the transaction took place, as shown by the evidence and found by other unquestioned findings, it is difficult to avoid the inference that the transaction was intended, and at the time understood by all the parties to it not only to settle and put an end to the pending litigations and all matters in dispute between the plaintiffs and the defendant, but also to satisfy and extinguish the defendant's mortgages, mortgage debts, and claims of every kind.

The absoluteness of the deeds, the fullness of the mutual releases, the careful wording and just dating of the letter to Coddington, and the addressing and giving of it to him instead of the plaintiffs or either of them, with the purpose avowed at the time of preventing the transaction being called

or having the appearance of a mortgage, the consent that judgments be entered in the defendant's favor in the two actions, the payment of the $1,500 to Coddington, all tend forcibly to this inference.

The circumstance that the property was at the time worth little, if any, more than the mortgages on it, and the nature of the then pending litigations between the parties, makes it not unlikely that the plaintiffs thought it best to convey the property to the defendant in satisfaction of his mortgages and claims upon receiving back the letter to Coddington, as giving them a right to repurchase and to a reconveyance or to reconveyances upon the terms specified in it.

The very circumstance that the defendant's claims were upon mortgage tends to the same inference, for why should he wish by the transaction to create a new mortgage, or why should he go through with all the formalities of the transaction for the mere purpose of extending the time of payment of his mortgage debts?

It is not singular nor inconsistent with this inference that the defendant should retain his mortgages as muniments of title, especially considering that the defendant himself had attacked the conveyance to the plaintiff, Jerusha Whitney, and under which she claimed title, as fraudulent and void, as to the creditors of her husband.

The circumstance that the deed from the plaintiffs to the defendant was drawn, conveying the property subject to all the mortgages, is consistent with an intention on the part of the defendant to retain his mortgages as muniments of title.

If the property, instead of greatly appreciating in value, had depreciated, and the defendant, after the time fixed by the letter to Coddington, upon the theory that the transaction of the 8th of October, had left the equity of redemption in the plaintiffs or in Jerusha Whitney and continued his mortgage debts, had undertaken to foreclose the equity of redemption and obtain a decree for any deficiency, could not the transaction of the 8th of October have been set up as a bar to the proceeding?  I think it could.  If so, I do not see

how the plaintiffs or Jerusha Whitney can have the right to redeem.

Jerusha Whitney probably was not personally present at the transaction, but her husband was, and acted for himself and her, and must be presumed to have been authorized so to act, and he had counsel with him. There can be no doubt that she is bound by the transaction and its judicial interpretation.

The view which has been taken of the case makes it unnecessary to pass upon the numerous exceptions to the findings and omissions to find. In the view which has been taken of the case, it is immaterial whether they or any of them were well taken or not. The right of the plaintiffs or of Jerusha Whitney to redeem it, if it exists, must rest on the conceded circumstances of the transaction of the 8th of October.

The evidence of the previous negotiations between Mr. Nash and Mr. Dyett probably was not admissible as against the plaintiffs, but I cannot see in any view of the case that the evidence could injure the plaintiffs; and in the view of the case which has been taken, the evidence is entirely immaterial.

The evidence of usury was properly excluded. The question of usury, in fact, was not made by the pleadings, and the whole transaction of the 8th of October was upon the theory that the plaintiffs by it abandoned and intended to abandon the charge or question of usury.

The judgment should be affirmed, but I am inclined to think, considering the circumstances of the case, that the judgment should be affirmed without costs to any party as against another party.

CLERKE, P. J. I concur in the conclusion at which Judge SUTHERLAND has arrived, except as to costs. It was a very clear case, in my opinion. The defendant plainly never would have been troubled with this long and cumbrous litigation if the property had depreciated instead of having risen in value. I am in favor of affirmance with costs.

Judgment affirmed.